# Exhibit M

# SHULMAN ROGERS

**JOY C. EINSTEIN** | ATTORNEY AT LAW
T 301.945.9250  E jeinstein@shulmanrogers.com

June 30, 2023

*Via First Class Mail and Email*

Michael Schrier, Esq.
Husch Blackwell
1801 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Michael.schrier@huschblackwell.com

    **RE:  Response to Enforcement Letters to DeepJudge and Kennan Samman**

Dear Mr. Schrier:

    This firm has been retained by DeepJudge AG ("DeepJudge" or the "Company") and Kennan Samman ("Mr. Samman") to respond to the letters you sent to both of them expressing concerns that Mr. Samman's future employment with DeepJudge would violate certain of Mr. Samman's post-employment obligations to Kira (US) Inc ("Kira (US)"). Both Mr. Samman and DeepJudge take the allegations in your letters very seriously and appreciate the opportunity to respond.

    As an initial matter, Mr. Samman has been incredibly open and forthcoming with Kira (US) about his future plans. To that end, he informed Kira (US) of where he was going and the role that he was taking on. In addition, DeepJudge has also been cooperative and collaborative with Kira (US), even providing it with a product demonstration to show exactly how it differs from Kira. Mr. Samman and DeepJudge have acted in such a manner because DeepJudge is truly not a competitor to any of the Litera portfolio of products so neither Mr. Samman nor DeepJudge has anything to hide.

    As another preliminary matter, in 2019, Mr. Samman signed an Assignment of IP and Confidentiality Agreement with Kira Inc., an Ontario corporation. The Assignment of IP and Confidentiality Agreement provides that he cannot, for a period of one year after the termination of his employment with Kira Inc., solicit Kira Inc.'s customers or work for a Competing Entity. However, Mr. Samman has not worked for Kira Inc. since December 2021, so the post-employment non-solicitation and non-competition obligations he owes to Kira Inc. and to which you cite in your letter are expired. I assume that you have recognized this deficiency with regard to the Assignment of IP and Confidentiality Agreement, which is why your letter focuses on the Restrictive Covenants Agreement with Litera Holdco LP and Litera Intermediate Holdco LLC (collectively, "Litera").

**SHULMAN ROGERS**

Michael Schrier, Esq.
June 30, 2023

    As to the Restrictive Covenants Agreement, for the 12-month period following the termination of his employment, Mr. Samman may not engage in a Competitive Activity in the Restricted Area for a Competitor. Competitor is defined as any business that:

> (x) engages in any business in which the Group is engaged in as of such date, but ending on the Termination Date, including without limitation, (I) the business of providing software for business development, pricing, marketing or talent management to the legal sector, including law firms across the world and (II) the business of providing software for drafting, proofreading, comparing, repairing, cleaning, securing documents, transaction management, contract analytics and litigation management (including any software that competes with the Litera software, including but not limited to, Litera Transact, Kira and Litigate) to legal and life sciences customers and others across the world or (y) otherwise engages in business that the Partnership or any Group Company intends, in the following twelve (12) calendar month period, to actively pursue in a material respect, and that has been discussed by the General Partner Board and of which the Management Member has knowledge.

Agreement at ¶ 1(a)(iv)(2). Kira (US)'s position appears to be that because DeepJudge sells products to the "'legal sector' and legal customers" it must be a Competitor within the meaning of the Restrictive Covenant Agreement. However, Mr. Samman's non-competition restrictions are not that broad, and, if they were, they would be unenforceable.

    The Restrictive Covenant Agreement restricts Mr. Samman from working for a business that "engages in any business in which the Group is engaged," and gives examples of such "business," to include "providing software for business development, pricing, marketing or talent management to the legal sector" or "providing software for drafting, proofreading, comparing, repairing, cleaning, securing documents, transaction management, contract analytics and litigation management (including any software that competes with the Litera software, including but not limited to, Litera Transact, Kira and Litigate) to legal and life sciences customers and others across the world." *Id.*

    DeepJudge, in contrast, is engaged in the business of providing a search product. More specifically, DeepJudge enables searching with natural language over the entire unstructured document collection in the DMS / KMS (typically iManage, Netdocuments or OpenText) no matter how large, in order to quickly surface relevant documents (including emails) and relevant language within the same, down to the paragraph level. DeepJudge is marketed as a semantic, scalable and secure AI-powered knowledge search engine. Clients purchase DeepJudge if they are interested in finding ways to quickly locate and use prior work product.

**SHULMAN ROGERS**

Michael Schrier, Esq.
June 30, 2023

Although this should be evident from the detailed business description above, for the purpose of clarity:

- DeepJudge is not a business development or marketing tool and does not target the Chief Business Development Officer or Chief Marketing Officer. DeepJudge is not an experience platform that aggregates, synthesizes, or breaks down the disparate business systems silos like time & billing, HR, CRM through integrating with said systems to transform data into usable actionable information;

- DeepJudge is not a pricing, scoping, or budgeting tool and does not target the Chief Finance Officer. DeepJudge is not a business intelligence tool that integrates financial data into the platform for financial reporting objectives;

- DeepJudge is not a talent management tool and does not target the Chief People or HR Officer. DeepJudge is not a talent performance or CLE platform that aligns planning, performance, and engagement of people resources through the talent performance, recruiting and hiring, and CLE lifecycle;

- DeepJudge is not a drafting tool and does not target the Chief Information Officer for the specific purposes of solving drafting business problems. DeepJudge does not draft, proofread, compare, repair, clean, or secure documents throughout the entire end-to-end drafting lifecycle;

- DeepJudge is not a transaction management tool and does not sell to the Chief Information Officer or transactional practices for the specific purpose of solving transaction management. DeepJudge does not ingest or process live transactional client matters for transactional deal management;

- DeepJudge is not a litigation management tool and does not sell to the Chief Information Officer or litigation practice for the specific purpose of solving litigation management. DeepJudge does not ingest or process live litigation client matters for litigation matter management; and

- DeepJudge is not a contract analytics tool and does not sell to the Chief Information Officer or transactional practices for the specific purpose of solving contract analytics for M&A due diligence or real estate lease review. DeepJudge does not ingest, process, analyze, search and review, and export clients report for live client transactions.

**SHULMAN ROGERS**

Michael Schrier, Esq.
June 30, 2023

Your letter does not identify any company or product within the Litera portfolio that allegedly engages in the same search product business as DeepJudge. However, because you represent Kira (US), I will assume that Kira (US) believes its own product, Kira, is competitive with DeepJudge's search product. However, Kira is a project-based review and analytics tool focused on contracts and related documents. Kira captures the full workflow of contract review whereby the user creates a project for each client matter to review key terms and provisions contract-by-contract, a user experience unique to Kira and contract analysis tools. Customers typically pull third party documents from a file sharing site, such as Intralinks, into Kira, e.g., to conduct due diligence on a target company being contemplated for an acquisition. Upon information and belief, Kira is not marketed or intended to be used for the purposes of a DMS search engine.

Accordingly, because DeepJudge does not compete with any product in the current Litera portfolio, there is no risk that runs afoul of Mr. Samman's non-competition obligations to Litera. It is more likely that Litera and DeepJudge would become partners than ever compete.

Two other points bear mentioning with respect to Mr. Samman's non-competition restrictions. DeepJudge and Mr. Samman are aware that Litera has failed to enforce non-compete provisions against other employees who have resigned from Litera. Litera's failure to enforce such provisions against other employees is further evidence that Litera does not truly have a protectable interest here.

Finally, to the extent Litera and/or Kira (US)'s position is that Mr. Samman is prohibited from competing at all in the legal tech sector, the Restrictive Covenants Agreement would be unenforceable as unreasonably overbroad. Such an interpretation would render the non-compete facially unreasonable because it would not be narrowly tailored to a protectable interest.

In moving on to Mr. Samman's non-solicitation and non-disclosure obligations, although Mr. Samman may potentially call upon Kira (US)'s clients, it would not be to sell them a competing product or to otherwise interfere with any relationship with Kira (US) and therefore, even if such contact is a technical violation, there would be no damages for the same. As to the non-disclosure obligations, Mr. Samman confirms that he takes these obligations very seriously and will not use or disclose any of Kira (US)'s or Litera's confidential information. In addition, because Kira (US)'s product and DeepJudge's product are fundamentally different, he will have no need, desire, or occasion to use Kira's confidential information.

As to the non-disparagement provision, Mr. Samman has greatly appreciated his time with Litera and is willing to make a mutually-drafted public statement on his positive experience at Litera, and gratitude for the people and business during his time there, if this is of interest to Litera in putting this dispute behind it.



Michael Schrier, Esq.
June 30, 2023

Given the above, please be advised that DeepJudge and Mr. Samman will vigorously oppose any attempts by Kira (US) to seek enforcement of the Restrictive Covenants Agreement.

I trust this letter resolves any concerns Kira (US) has regarding Mr. Samman's future employment with DeepJudge. Should you have any additional questions, please feel free to contact me directly.

Very truly yours,

*Joy Einstein*

Joy C. Einstein