UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KIRA (US) INC.,<br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KEENAN SAMMAN and DEEPJUDGE AG,<br>　　　　　Defendants. | Civil Action No. 1:23-cv-919 (MSN/WEF) |

**<u>MEMORANDUM OPINION & ORDER</u>**

This matter comes before the Court on Plaintiff Kira (US) Inc.'s Motion for a Temporary Restraining Order and/or Preliminary Injunction (Dkt. No. 6) ("TRO Motion"), Plaintiff's Motion for Leave of Court to Conduct Expedited Discovery (Dkt. No. 9) ("Expedited Discovery Motion"), and Plaintiff's Motion to Seal Documents (Dkt. No. 11) ("Sealing Motion").

**I.     BACKGROUND**

**A.     FACTUAL BACKGROUND**

Plaintiff Kira (US) Inc. ("Kira") develops machine learning software for the legal industry, including its product Kira, a tool used by law firms. (Dkt. No. 1) (Compl. ¶¶ 7-8). Kira's affiliate, Freedom Solutions Group, LLC developed another product, Content (Clause) Companion ("Clause Companion"), a cloud-based application also intended for law firms. *Id.* ¶ 10. Kira offers an integration of its product with Clause Companion to automatically identify and extract information from contracts into the Clause Companion library, enabling users to quickly retrieve and re-use trusted content when drafting their documents, without any interruptions in their workflow. *Id.* ¶ 11. Kira and Freedom Solutions Group are also currently developing a number of generative artificial intelligence cloud-based applications intended for law firms. *Id.* ¶ 13.

Kira alleges that DeepJudge AG ("DeepJudge") is in the business of providing artificial

intelligence search tools for law firms and corporate legal departments. *Id.* ¶ 46. According to Kira, "[b]oth entities provide tools to quickly locate, reuse, and/or adapt templates, clauses, language and arguments to leverage the experience and expertise of a law firm and boost firm productivity." *Id.* ¶ 46.

Defendant Keenan Samman[1] was hired by Kira in February 2019, and he became Vice President of Global Product Sales in January 2022.[2] *Id.* ¶ 19. In that role, Samman had access to Kira's confidential and proprietary information, including "information pertaining to Kira's current and prospective clients and employees as well as technical information about Kira's various legal products." *Id.* ¶ 20. Samman was involved in the strategy development of new products, including its GenAI Projects, and was involved in the strategy on Clause Companion. *Id.* ¶ 22.

On December 30, 2021, Samman entered into a Restrictive Covenants Agreement with Litera Holdco LP and Litera Intermediate Holdco LLC, the entity that subsequently purchased Kira ("Restrictive Covenants Agreement," together with Kira Agreement), *see* (Dkt. No. 1-2) (Ex. B to Compl.). The Restrictive Covenants Agreement includes a non-competition restrictive covenant that states:

> The Management Member further agrees that from the Termination Date and until the end of the twelve (12) calendar month period following the Termination Date, the Management Member shall not, directly or indirectly, engage in any Competitive Activity in the Restricted Area for, or on behalf of, any Person or business that is, in whole or in part, a Competitor.

Ex. B ¶ 1(a)(ii). "Competitor" is defined in the Restrictive Covenants Agreement as:

> any business that (x) engages in any business in which the Group is engaged in any business in which the Group is engaged in as of such date, but ending on the Termination Date, including without limitation, (I) the business of providing software for business development, pricing, marketing or talent management to the legal sector, including law firms across the world and (II) the business of providing

---

[1] Plaintiff has spelled Defendant's name as "Keenan Samman" in its pleadings, but that spelling is likely a typographical error because Defendant Samman's Opposition spells the name as "Kennan Samman."

[2] Plaintiff's Complaint and TRO Motion state that Samman's employment with Kira began in 2019, but Defendant Samman's Opposition and accompanying declaration state that he has been with Kira or Litera since 2015. *See* Opp. at 3, Opp. Ex. A (Dkt. No. 1-1) ¶ 8.

> software for drafting, proofreading, comparing, repairing, cleaning, securing documents, transaction management, contract analytics and litigation management (including any software that competes with the Litera software, including but not limited to, Litera Transact, Kira and Litigate) to legal and life sciences customers and others across the world or (y) otherwise engages in business that the Partnership or any Group Company intends, in the following twelve (12) calendar month period, to actively pursue in a material respect, and that has been discussed by the General Partner Board and of which the Management Member has knowledge[.]

*Id.* ¶ 1(a)(iv)(2). And "Competitive Activity" is defined as:

> rendering advice or providing any services that are the same as or similar in function or purpose as those the Management Member provided to the Partnership or any Group Company at any time during the twenty-four (24) calendar month period preceding the Termination Date, including, without limitation, providing executive leadership, product and strategy development, marketing and resource allocation guidance[.]"

*Id.* ¶ 1(a)(iv)(1).

On June 13, 2023, Samman informed Kira that he would be resigning from the company. *Id.* ¶ 42. Kira alleges that by this time, Samman had already accepted an offer of employment to become the Chief Revenue Officer of DeepJudge. *Id.* ¶ 43. Kira alleges that in the days prior to June 13, 2023, Samman emailed proprietary and confidential information he obtained from his employment at Kira to his personal e-mail account. These emails include proprietary or confidential information, including certain details about Kira's customers that would be valuable to a competitor. *See id.* ¶ 45. Kira alleges that, despite correspondence with DeepJudge informing the company of Samman's contractual obligations, including the non-competition covenant, DeepJudge nonetheless onboarded Samman as its Chief Revenue Officer on July 12, 2023. *Id.* ¶¶ 54-58.

## B.   PROCEDURAL HISTORY

On July 13, 2023, Kira filed a verified complaint seeking injunctive and other relief against Samman and DeepJudge. (Dkt. No. 1) ("Compl."). Count I alleges Samman breached his contractual obligations under two agreements. Specifically, Kira alleges Samman violated the non-competition

provision of the Restrictive Covenants Agreement and those of another agreement Samman signed in 2019. Compl. ¶¶ 59-70. Count II alleges tortious interference with a contract against Defendant DeepJudge.[3]

On July 13, 2023, Plaintiff filed a TRO Motion seeking a TRO and/or a preliminary injunction that (1) enjoins Samman from working for DeepJudge, and (2) requires Samman to return and delete all materials containing Kira's proprietary information that he transmitted or otherwise improperly retained from his employment with Kira without proper authority. TRO Mot. at 23; *see also* (Dkt. No. 8) (Proposed Order). Plaintiff also filed on July 13, 2023 a Motion for Leave to Conduct Expedited Discovery and to Seal Documents. (Dkt. Nos. 9, 11).

On July 20, 2023, Defendant Samman filed an opposition to the TRO Motion (Dkt. NO. 28) and to the Motion for Expedited Discovery (Dkt. No. 29). The Court held a hearing on Friday, July 21, 2023. Upon consideration of the motions, the memoranda in support thereof, the oppositions, the arguments of counsel, and for the reasons stated in open court and those set forth below, the Court will grant the TRO Motion; grant the Expedited Discovery Motion, and grant the Sealing Motion.

## II.    TRO MOTION

A TRO "preserve[s] the status quo only until a preliminary injunction hearing can be held." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). A TRO is a drastic remedy intended to preserve the status quo until the Court can hold a hearing on motion for a preliminary injunction. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). "The standard for granting either a TRO or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006). To prevail on a TRO or a preliminary

---

[3] DeepJudge has been named as a defendant in this action, but there is no evidence that they have been served with the Complaint or any of the other pleadings filed in this action.

injunction, a plaintiff must show (1) a likelihood of success on the merits of its claims; (2) a likelihood of irreparable harm in the absence of the requested preliminary relief; (3) that the balance of equities favors the plaintiff; and (4) that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 501 (E.D. Va. 2021) (the standard for a preliminary injunction and TRO are the same).

## A.   LIKELIHOOD OF SUCCESS ON THE MERITS

The movant seeking a preliminary injunction must make a "clear showing that it is likely to succeed at trial on the merits." *The Real Truth About Obama, Inc. v. Fed. Elec. Comm'n*, 575 F.3d 342, 351 (4th Cir. 2009). The movant also bears the burden of showing a likelihood of success on at least one of its claims. *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). On the breach of contract claim against Samman, Kira has met its burden of demonstrating a likelihood of success on the merits with respect to the breach of a noncompetition restrictive covenant.[4]

Because the breach of a non-competition restrictive covenant is alleged, Plaintiff must demonstrate the enforceability of the covenant. The Court finds that Kira has met its burden in establishing the enforceability of the non-competition restrictive covenant, as the covenant "'(1) meet[s] general contract law requirements, (2) [is] reasonable in scope and duration, both geographically and temporally, (3) advance[s] a legitimate economic interest of the party enforcing the covenant, and (4) survive[s] a balance of the equities.'" *See Alt. Diving Supply, Inc.*, No. 2:14cv380, 2014 WL 3783343, at *6 (E.D. Va July 31, 2014) (discussing enforceability of

---

[4]      The Restrictive Covenant Agreements contains a provision stating that the agreement shall be governed by and construed in accordance with the laws of the State of Delaware. Ex. B ¶ 5(c). Because this case comes before the Court on diversity, the Court applies the substantive law of Virginia, including its choice-of-law rules." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (cleaned up). "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir 2007) (cleaned up). Accordingly, the Court will apply Delaware law.

restrictive covenants under Delaware law and quoting *All Pro Maids, Inc. v. Layton*, No. Civ. A. 058–N, 2004 WL 1878784 (Del. Ch. Aug. 10, 2004)). Here, the covenant meets general contract law requirements, and both the one-year limitation and geographic scope of the non-competition covenant is reasonable given Samman's senior management position at Kira and the nature of Kira's products and the wide reach of its products. *See O'Leary v. Telecom Res. Serv., LLC*, No. 10C–03–108–JOH, 2011 WL 379300, at *5 (Del. Super. Ct. Jan.14, 2011) ("Delaware courts and other jurisdictions have permitted a nationwide non-compete covenant in certain circumstances and are not averse to broad geographical scopes when they are necessary to protect the legitimate business interest of the party trying to enforce the covenant."). And the non-competition covenant is not too expansive, as it circumscribes the businesses that Samman cannot maintain employment for twelve months after leaving Kira to the type of business with which Kira is engaged. *See* Ex. B ¶ 1(a)(iv)(2). Moreover, the noncompetition covenant advances Kira's legitimate economic interest in preventing a direct competitor of Kira from benefiting from information Samman gained through his term with the company. And, the balance of equities favors Kira. *Infra* Section I.C.

Having established the likelihood of the enforceability of the restrictive covenant, the Court further finds that Kira has demonstrated a likelihood of success on the merits of the breach of contract claim. Under Delaware law, the elements of a breach of contract claim are: "a) the existence of a contract; b) the breach of an obligation imposed by that contract; and c) resulting damages to the plaintiff." *Atl. Diving Supply, Inc. v. Moses*, 2014 WL 3783343, at *6.

First, Samman entered into two contractual agreements with Kira as a result of his employment. *See* Exs. A, B.

Second, there is good cause to conclude that Samman violated the noncompetition restrictive covenants of the Noncompete Agreements. The Restrictive Covenants Agreement, prohibits Samman for a period of twelve months following his termination from Kira from "engag[ing] in

any Competitive Activity . . . for, or on behalf of, any . . . business that is, in whole or in part, a Competitor." Ex. B ¶ 1(a)(ii). But one month following his resignation from Kira, where he held the title of Vice President of Global Product Sales, Samman began working as the Chief Revenue Officer at DeepJudge.

Kira has adequately demonstrated that his new responsibilities and role sufficiently comprise "Competitive Activity" as defined in the Restrictive Covenants Agreement. *See* Ex. B ¶ 1(a)(iv)(1). Here, Samman's role as Chief Revenue Officer at DeepJudge is "similar in function or purpose" as his former role as Vice President of Global Product Sales at Kira. *See id.* ¶ 1(a)(iv)(1); Compl. ¶¶ 19-23 (describing Samman's expansive responsibilities at Kira, including "managing sales teams and generating sales," building and implementing pricing and strategic initiatives," and "strategy development of new features and products"); Ex. C (describing Samman as "spearhead[ing] DeepJudge's expansion initiatives globally").

And the Court finds that Kira has met its burden at this stage in establishing that DeepJudge and Kira are "competitors." DeepJudge insists that its product is not competitive with Kira's products because it is a "search" tool ("Google for law firms" as defense counsel stated at oral argument) that is designed to operate across a company's entire document management system rather than the "project-based" contract review tool sold by Kira. *See* Opp. at 18-21. DeepJudge has submitted several declarations in support of its argument, including from Kira's former chief marketing officer, chief product officer, and chief strategy officer, and various customers. *See* Opp. at 18-21. As evidenced by several exhibits attached to the Complaint and TRO Motion (*see* Ex. C, D, E, H, I, W; Compl. ¶¶ 46-52), however, Kira has sufficiently demonstrated at this stage that the two companies both engage in the business of providing Generative AI and machine learning software to the legal sector, including for law firms globally. The products are intended to be distributed to similar clients and have similar features. For instance, both Kira and DeepJudge have

applications that integrate with various document management systems, search content within the applicable system, find clauses and documents within that system, query the inclusion of legal terms or issues from documents within the system, and adds metadata to content in the documents. Compl. ¶¶ 50-52, Ex. W. Both companies also are currently developing generative AI cloud-based applications intended for law firms that include nearly identical features. Compl. ¶¶ 52, Ex. C. At the TRO hearing, counsel for Samman argued that DeepJudge's product operated across a law firm's entire document management system such that one could search multiple types of input materials (*e.g.*, emails, word documents, etc.), as opposed to the more limited materials that could be searched using the Kira product. But this argument only highlights the difference in *scale* between the products; the fundamental purpose of the products and their functionality are similar such that the two companies would compete for the same customers.

Third, Kira has demonstrated that there is a likelihood it will establish damages from Samman's breach, as Samman possessed confidential knowledge about Kira's clients, strategies and development process for various products and machine learning software that compete for the same client base as those of DeepJudge, and that he could use that confidential information in violation of the noncompetition restrictive covenant and to Kira's detriment. Accordingly, the Court finds that there is a likelihood that Kira will prevail on the merits of its breach of contract claim.

### B.   IRREPARABLE HARM

Kira has demonstrated that it will suffer irreparable harm if the TRO Motion is not granted. The Restrictive Covenant Agreement includes a provision stipulating that any breach of the agreement will result in irreparable harm. Ex. B ¶ 4. Delaware courts have held that such "stipulations as to irreparable harm alone suffice to establish that element for the purpose of issuing . . . injunctive relief.'" *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 68 A.3d 1208, 1226 (Del. 2012). Beyond the contractual provision, Kira has also demonstrated that it is likely to

experience irreparable harm absent injunctive relief. Given that Samman transmitted confidential materials immediately before he joined a direct competitor, Kira is at risk of permanent loss of its customers. *See Update, Inc. v. Samilow*, 311 F. Supp. 3d 784, 796 (E.D. Va. 2018) (the "threat of a permanent loss of customers . . . support[s] a finding of irreparable harm").

### C.    BALANCE OF EQUITIES

As discussed above, Kira is at risk of suffering irreparable harm, including a loss of clients, absent injunctive relief. Although Kira argues that it is not preventing Samman from earning a livelihood by enforcing the noncompetition restrictive covenant, the relief Kira seeks would prohibit Samman from working for his current employer, DeepJudge. But the noncompete restrictive covenant, which Kira has established Samman has likely breached, were entered into voluntarily by Samman. Essentially, injunctive relief will only prohibit Samman from violating his contractual obligations under the agreements. Moreover, the injunctive relief Kira seeks does not preclude Samman from working elsewhere. On balance, the Court finds that this factor weighs in favor of Kira.

### D.    PUBLIC INTEREST

Finally, injunctive relief is intended only to restrain him from violating his contractual obligations. Public interest favors protecting confidential business information and enforcing valid contracts. *See Cap. One Fin. Corp. v. Sykes*, No. 20-cv-763, 2021 WL 2903241, at *15 (E.D. Va. July 9, 2021). "The public has an interest in allowing companies like [plaintiff] to protect confidential information, to obtain temporary injunctive relief to enjoin any further breach or disclosure, and ultimately to avoid irreparable harm and the destruction of incentives to develop proprietary information." *Id.*, 2021 WL 2903241, at *15. For these reasons, injunctive relief is in the interest of the public.

### E.     BOND

Under Rule 65(c), the Court would normally require a bond when granting a temporary restraining order. Fed. R. Civ. P. 65(c). The Restrictive Covenant Agreement includes a provision that in the event of breach, the nonbreaching party will be entitled to seek a restraining order without the necessity of providing damages. Ex. B ¶ 4. Samman requests Kira post a security in the amount of $1,096 for every day that he is enjoined, as that approximates his losses. Opp. at 24. Here, where Samman will be temporarily enjoined from working at DeepJudge, the Court finds that a bond is appropriate in this case. The Court therefore orders Kira to post bond in the amount of $15,000 to be paid into an account held by Plaintiff's counsel.

## III.    MOTION FOR EXPEDITED DISCOVERY

Expedited discovery is only granted in circumstances where the movant makes a "strong showing of merits and irreparable harm to [the movant] in the absence of expedited discovery." *Kia Motors Am., Inc. v. Greenbrier GMC, Inc.*, No. 20-428, 2020 WL 8970813, at *2 (E.D. Va. Dec. 11, 2020). The Court finds that because that Kira has demonstrated likelihood of success on its merits and irreparable harm, expedited discovery is warranted. Accordingly, the Court will grant Kira's Motion for Expedited Discovery, and will also grant Samman's alternative request for reciprocal discovery. As stated in open court, Kira and Samman are to confer immediately on the scope of expedited discovery, a proposed discovery schedule, and submit a joint proposed discovery schedule to the Court by no later than July 24, 2023 at 5:00 p.m. The parties are further directed to propose a Friday date in late August or early September for the Preliminary Injunction hearing for the Court's consideration.

## IV.    MOTION TO SEAL

Before a court seals any court documents, it must (1) give public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives

to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 288 (4th Cir. 2000). Here, Kira has provided notice to the public, as the motion was filed on the public docket. The Court has considered less drastic alternatives, including redactions, but finds that because the documents are replete with proprietary and confidential information, these alternatives are not practical. Accordingly, the Court will grant Kira's Motion to Seal Exhibits N-W. (Dkt. No. 11).

## V.     CONCLUSION

For the reasons stated above and in open court, it is hereby

**ORDERED** that Kira's Motion for a Temporary Restraining Order (Dkt. No. 6) is **GRANTED**; it is further

**ORDERED** that Samman is enjoined from working for DeepJudge while this Order remains in effect, as outlined in Fed. R. Civ. P. 65(b)(2); it is further

**ORDERED** that Kira's Motion for Leave of Court to Conduct Expedited Discovery (Dkt. No. 9) and Samman's request to conduct reciprocal discovery are **GRANTED**; it is further

**ORDERED** that Kira and Samman shall file by July 24, 2023 at 5:00 p.m. a joint proposed discovery schedule to include the date for a hearing on the motion for preliminary injunction; and it is further

**ORDERED** that Plaintiff's Motion to Seal Documents (Dkt. No. 11) is **GRANTED** and Exhibits N-W shall be placed under seal.

It is **SO ORDERED**.

                                                                      /s/
                                                        _____
                                                        Hon. Michael S. Nachmanoff
                                                        United States District Judge

Alexandria, Virginia
July 21, 2023