**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

KIRA (US) INC.                                    )
550 W. Jackson Blvd, Suite 200          )
Chicago IL 60661,                              )
                                                         )
          Plaintiff,                                 )
                                                         )
v.                                                       )          Case No. 1:23-cv-919 (MSN/WEF)
                                                         )
KEENAN SAMMAN                            )
2316 Riviera Drive                             )
Vienna, Virginia 22181,                     )
                                                         )
          and                                         )
                                                         )
DEEPJUDGE AG                                )
Zeughausstrasse 31, 8004                  )
Zürich, Switzerland,                          )
                                                         )
          Defendants.                            )
_____)

**AMENDED VERIFIED COMPLAINT**

Plaintiff Kira (US) Inc. ("Kira"), by and through undersigned counsel, files this Amended Complaint for injunctive and other relief against Defendants Kennan Samman ("Samman") and DeepJudge AG ("DeepJudge"). In support of its Amended Complaint, Kira states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.       Kira is a for-profit corporation organized under Delaware law with its principal place of business located at 550 W. Jackson Blvd., Suite 200, Chicago, IL 60661.

2.       Upon information and belief, Samman is an individual residing at 2316 Riviera Drive, Vienna, Virginia 22181.

3.      DeepJudge is a Swiss corporation with its principal place of business located at Zeughausstrasse 31, 8004 Zürich, Switzerland.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) in that the amount in controversy in each of the state law claims at issue in this case exceeds $75,000 and the claims are between citizens of different states and citizens of a foreign state.

5.      Defendants are subject to the personal jurisdiction of this Court based on, among other things, Samman residing in this District as well as Defendants "[t]ransacting any business in this Commonwealth," "[c]ontracting to supply services or things in this Commonwealth," and/or "[c]ausing tortious injury by an act or omission in this Commonwealth." Virginia Code § 8.01-328.1.

6.      Venue is appropriate in this Court and in this Division pursuant to 28 U.S.C. § 1391 because this is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred and/or Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### I.      Kira (US), Inc.

7.      Kira is an industry leader in the highly competitive business of machine learning software in the legal industry.

8.      Kira's patented machine learning artificial intelligence software has the capacity to identify, extract, and analyze content in contracts and other documents.

9.      Kira empowers law firms to find clauses and data points from a large contract corpus in a fraction of the time that it traditionally takes. Further, it proactively analyzes

areas of exposure within documents to quickly enable law firms to act upon potential threats.

10.     Kira's affiliate, Freedom Solutions Group, LLC developed a software solution named Content (Clause) Companion ("Clause Companion"), a cloud-based application and is intended for law firms.

11.     Kira offers an integration of its product with Clause Companion to automatically identify and extract information from contracts into the Clause Companion library, enabling users to quickly retrieve and re-use trusted content when drafting their documents, without any interruptions in their workflow.

12.     The Kira integration with Clause Companion allows users to, among other things: integrate with various document management systems ("DMS"), such as iManage or Sharepoint; search content within the applicable DMS; find precedent clauses from documents contained within the DMS; query the inclusion of legal terms or issues from documents contained within the DMS; and add metadata and classification to content in the documents.

13.     Kira and its affiliate, Freedom Solutions Group LLC, are in the process of developing a number of generative artificial intelligence cloud-based applications intended for law firms that are similar to the Kira Clause Companion integration ("GenAI Projects"). Like their predecessor, the GenAI Projects allow users to integrate with a DMS and search and query content from documents in the DMS. These GenAI Projects additionally let users grab "snippets" of documents within the DMS, contain advanced context-based understanding and processing for legal documents, and provide use cases that can assist in a variety of law firm activities, such as drafting, reviewing, and pitching.

14.    Kira markets and sells its products to law firm and corporate legal department clients across the United States.

15.    Kira's business is centered on the relationships it builds with law firms.  Kira must build and maintain relationships with clients, and Kira's success is largely due to its reputation in the legal industry and the hard-earned goodwill it developed over time with clients.

16.    Kira invests considerable time and resources to develop its client relationships. This investment includes providing Kira's trained and trusted internal employees access to these client relationships so that the employees can sustain and build upon Kira's goodwill.

17.    Through the expenditure of significant resources and effort over years of business, Kira developed and maintains confidential and proprietary information that provides a distinct advantage over its competitors in the legal industry.  This confidential and proprietary information includes, but is not limited to, information related to Kira's technical capabilities for its various legal-facing applications as well as its proprietary business practices, including, but not limited to, sales and marketing strategies, pricing and costs, project management practices, and other internal procedures and processes related to training, client marketing and development, and the development of Generative AI and machine learning software.

18.    This information is not available to the public or Kira's competitors.  It is also reasonably safeguarded by Kira through password-protected computers; company-specific and password-protected intranet platforms; information security policies; a code of conduct; and confidentiality agreements that include nondisclosure and other restrictive covenants. *(See* Assignment of IP and Confidentiality Agreement (the "Kira Agreement"), attached as

Exhibit A; Restrictive Covenants Agreement with Litera Holdco LP and Litera Intermediate Holdco LLC (the "Restrictive Covenants Agreement"), attached as Exhibit B.

## II.    Kira's Employment of Samman

19.    In February 2019, Kira hired Samman.  Samman's roles and duties expanded over time until he attained the role of Vice President of Global Product Sales in January 2022.  At all times, Samman worked remotely from his home in Virginia.

20.    As Vice President of Global Product Sales, Samman worked closely with Kira's clients and had access to Kira's confidential and proprietary information (including without limitation by way of his access to Kira's internal document sharing site, SharePoint), including information pertaining to Kira's current and prospective clients and employees as well as technical information about Kira's various legal products—both currently marketed and under development.

21.    Samman's responsibilities included, among other things: managing sales teams and generating sales; creating and maintaining customer relationships in the legal field; building and implementing pricing and strategic initiatives for Kira's products and services; and employee hiring, engagement, and retention. His position required him to develop in-depth knowledge and expertise in the products and capabilities that Kira developed, including Kira products, the Kira integration with Clause Companion and Kira's GenAI Projects so that he could effectively engage and grow Kira's current and prospective clients.

22.    During this past year, Samman had been engaged and involved with the product management, design and development teams of Kira and it's affiliate, Freedom Solutions Group LLC, on the strategy development of new features and products, including

its GenAI Projects, as well as early thinking on the use cases and market value of both the Kira, the Kira integration with Clause Companion, and the GenAI Projects. Samman was specifically involved in building an investment case for the GenAI Projects for Kira and it's related affiliated companies including, but not limited to, Kira's and its affiliated companies' Boards of Directors specifically around forward-looking revenue, bookings, pricing, and customer adoption strategies. Samman was also one of Kira's public faces on its GenAI Projects, speaking on public podcasts and conducting other public outreach. https://reinventingprofessionals.podbean.com/e/using-generative-ai-to-provide-greater-client-value/ (last visited July 10, 2023).

23. Therefore, Samman had access to, and knowledge of, the various technical capabilities of Kira's proprietary legal applications, Kira's confidential sales information, Kira's current and potential future client lists, and other company materials and documents not readily available to the public or Kira's competitors.

**III.    Samman's 2019 and 2021 Noncompete Agreements**

24. Samman entered into a legally enforceable, written agreement titled "Assignment of IP and Confidentiality Agreement" with Kira on February 25, 2019 (the "Kira Agreement"). A true and accurate copy of the Kira Agreement is attached hereto as Exhibit A.

25. Samman, in exchange for incentive units as a Management Member, entered into a legally enforceable Restrictive Covenants Agreement with Litera Holdco LP and Litera Intermediate Holdco LLC (collectively, "Litera") on December 30, 2021 (the "Restrictive Covenants Agreement") after Kira was acquired by Litera. A true and accurate copy of the Restrictive Covenant is attached hereto as Exhibit B.

26.    Kira, as a subsidiary of Litera, is a "Group Company" within the meaning of the Restrictive Covenants Agreement.

27.    Upon Kira's acquisition by Litera, Samman remained an employee of Kira and his original employment-related agreements (including the Kira Agreement) with Kira remained unchanged.

28.    The Restrictive Covenants Agreement contains a Delaware choice-of-law provision. Ex. B at 6.

29.    Samman stipulated that the restrictions in the Kira Agreement and the Restrictive Covenants Agreement (collectively, the "Noncompete Agreements"), including the post-employment restrictions, were reasonable and necessary to preserve Kira's legitimate and protectable interest in, among other things, its trade secrets, confidential and/or proprietary information, and goodwill with customers and employees. (Exhibit A, Kira Agreement; Exhibit B, Restrictive Covenant).

30.    Samman also stipulated in the Restrictive Covenants Agreement that any breach of that agreement will cause "irreparable harm" to Kira. Ex. B at 5.

31.    The Kira Agreement contains a non-disclosure clause that prohibits Samman from use or disclosure of any Proprietary Information (defined as "all information about software products, all inventions, discoveries, improvements, copyrightable work, source code, know-how, processes, designs, algorithms, computer programs and routines, formulae and techniques and any information regarding the business of any customer or supplier of the Company." (Ex. A at 2.)

32.    The Kira Agreement contains a non-solicitation restrictive covenant prohibiting Saman—for a period of 12 months from his termination from Kira—from

soliciting (a) any Kira customer "for the sale of any product or service of a type then sold by the Company for which [you] provided any assistance in planning, development, marketing, training, support, or maintenance" or (b) any Kira employee for employment. (Ex. A at 3.).

33.   The Kira Agreement contains a noncompetition restrictive covenant prohibiting Samman from engaging "in the management or control of . . . any person, firm corporation or business . . . that directly and substantially competes with the products and services of" Kira. (Ex. A at 3.)

34.   The Kira Agreement also contains the following clause:

> Return of Company Materials upon Termination. Employee acknowledges that all records, documents and Tangible Embodiments containing or of Proprietary Information prepared by Employee or coming into his possession by virtue of his employment by the Company are and will remain the property of the Company. Upon termination of his employment with the Company, Employee shall, upon request of Company and at the Company's option, immediately return to the Company or destroy all such items in his possession and all copies of such items.

(Ex A. at 2)

35.   The Restrictive Covenants Agreement contains a non-disclosure clause prohibiting the use or disclosure of any "Confidential Information." (Ex. B at 3.)

36.   The Restrictive Covenants Agreement defines "Confidential Information" as including, but not limited to:

> information relating to a client or a vendor's confidential or proprietary information, as well as information that assists the Partnership or any Company Group in making sales to a client or purchases from a vendor, any confidential ideas, research and development, finances, costs, profit margins, marketing, merchandising, know-how, formulas, customer lists, customer requirements, pricing, pricing methods, proprietary technology, developments, products, computer programs and techniques, work product and any other confidential or trade secret information.

(Ex. B at 3-4.)

37.     The Restrictive Covenants Agreement contains a non-solicitation restrictive covenant provision prohibiting Samman—for a period of 24 months from his termination date—from soliciting (a) any employee of a Group Company with whom Samman "had dealings during the then immediately precedent twelve (12) calendar month period" or (b) any "existing or prospective customers, suppliers, clients, distributors, vendors, investors or other business relationships of the Partnerships or any Group Company with whom [Samman] first had direct or actual contact, or about whom [Samman] received or had access to Confidential Information, during [his] employment." (Ex. B at 2-3.)

38.     The Restrictive Covenants Agreement contains a non-competition restrictive covenant prohibiting Samman—for a period of twelve months from his termination date— from engaging in any "Competitive Activity in the Restricted Area for or on behalf of . . . a Competitor." (Ex. B at 1-2.)

39.     Under the Restrictive Covenants Agreement, "Restricted Area" is defined as "the United States of America and any other country in which the Management Member provided services or had a material presence or influence for or on behalf of the Partnership or any Group Company" during the twenty-four month period immediately preceding Samman's termination.

40.     Under the Restrictive Covenants Agreement, "Competitive Activity" is defined as:

> rendering advice or providing any services that are the same as or similar in function or purpose as those the Management Member provided to the Partnership or any Group Company at any time during the twenty-four (24) calendar month period preceding the Termination Date, including, without limitation, providing executive leadership, product and strategy development, marketing and resource allocation guidance.

(Ex. B at 2).

41.    Under the Restrictive Covenants Agreement, "Competitor" is defined as:

> any business that (x) engages in any business in which the Group is engaged in as of such date, but ending on the Termination Date, including without limitation, (I) the business of providing software for business development, pricing, marketing or talent management to the legal sector, including law firms across the world and (II) the business of providing software for drafting, proofreading, comparing, repairing, cleaning, securing documents, transaction management, contract analytics and litigation management (including any software that competes with the Litera software, including but not limited to, Litera Transact, Kira and Litigate) to legal and life sciences customers and others across the world or (y) otherwise engages in business that the Partnership or any Group Company intends, in the following twelve (12) calendar month period, to actively pursue in a material respect, and that has been discussed by the General Partner Board and of which the Management Member has knowledge.

(Ex. B at 2.)

## IV.    Samman's Resignation From Kira And Breach Of Contractual Obligations

42.    On or about June 13, 2023, Samman gave notice of his intent to resign from Kira. Samman subsequently resigned from his employment with Kira.

43.    Sometime before June 13, 2023, Samman accepted an offer of employment with DeepJudge to become DeepJudge's next Chief Revenue Officer.

44.    Pursuant to a press release issued July 13, 2023 (the "Press Release"), DeepJudge hired Samman as Chief Revenue Officer. Exhibit C. As the Press Release details, DeepJudge has a history of hiring or retaining strategic leaders from Kira. *Id.*

45.    In the days leading up to his June 13, 2023 resignation, Samman emailed proprietary and confidential information he obtained from his employment at Kira to his personal e-mail account at kennan.samman@gmail.com. Among the many Kira emails he transmitted to his personal email account prior to announcing his resignation from Kira were the following, on the dates indicated:

    a.    On May 23, 2023, Samman sent an email with the subject "Gen AI/LLM"

along with five attachments to that email, to his personal email address.

b. On May 23, 2023, Samman sent an email with the subject "Work", along with seven attachments to that email, to his personal email address.

c. On June 1, 2023, Samman sent an email with the subject, "AI Briefing Notes" and a Word document entitled, "Ai Briefing Notes" as an attachment, to his personal email address.

d. On June 2, 2023, Samman forwarded an internal Kira email with the subject "Governance & Talent – EOW KPIs (5/29 – 6/2)" to his personal email address.

e. On June 2, 2023, Samman forwarded an internal Kira email with the subject, "Weekly Recap – Enterprise" to his personal email address.

f. On June 2, 2023, Samman forwarded an internal Kira email with the subject," Weekly recap – Workflow Large Law, Small Law & Corporate" to his personal email address.

g. On June 2, 2023, Samman forwarded an internal Kira email dated September 20, 2022 with the subject, "Forcasting principles & categories deck" along with a PowerPoint file as an attachment to his personal email address.

h. On June 2, 2022, Samman forwarded an internal Kira email dated August 29, 2022 with the subject, "Welcome to Litera! New Hire Onboarding" along with four attachments to his personal email address.

i. On June 2, 2023, Samman forwarded an internal Kira email dated June 30, 2022 with the subject "AM Playbook & RACI – Draft" along with two attachments to his personal email address.

j. On June 4, 2023, Samman forwarded an internal Kira email dated

February 13, 2023 with the subject "2023 Global Product Sales Kick-Off | Team Mantra – 1% Rule – Aggregation of Marginal Gains," along with two PowerPoint files as attachments to this email, to his personal email address.

All of the foregoing emails either constitute 'Proprietary Information" or "Confidential Information" in their own right or contain attachments that are "Proprietary Information" or "Confidential Information" within the meaning of the Restrictive Covenants Agreement and/or the Kira Agreement either by virtue of the information contained in such emails and attachments (such as Kira's go-forward strategy and product development with respect to Generative AI,  the identities of customers and their sales histories/projections) or the fact that many of the documents Samman forwarded to his personal email account were clearly labelled "Confidential" for "Internal Use."   All of the emails Samman forwarded to his personal email account are of the kind a competitor would want to receive or use to better compete against Kira.

46.     Samman returned his company-provided laptop to computer (the "Kira Computer") to Kira on July 13, 2023—one month after he tendered his resignation to Kira.

47.     Kira retained a third-party forensic examination vendor to conduct a forensic examination of the Kira Computer.  The results of the forensic examination revealed that Samman misappropriated Kira's confidential and proprietary information and trade secrets.

48.     The forensic examination revealed that, from May 8, 2023 through June 21, 2023, Samman accessed no fewer than 19 documents on Kira's internal SharePoint site that he had no legitimate reason to access in connection with his duties to Kira—many of which documents Samman accessed after he had already submitted his resignation to Kira.

49.    The forensic examination revealed that from May 8, 2023 through June 13, 2023 (the date on which Samman submitted his resignation), Samman used the Kira Computer to access the following documents on Kira's SharePoint site:

- Kira and Generative AI.docx
- PSI_Survey_Litera_March_2023_All_Results_multiple_filters (7).xlsx
- Revenue PSI Leadership Team Dept Views May 2023.pptx
- PSI_Survey_Litera_March_2023_All_Results_multiple_filters (8).xlsx

50.    The forensic examination revealed that after Samman tendered his resignation on June 13, 2023 and before he returned the Kira Computer to Kira, Samman used the Kira Computer to access the following internal webpages and documents on Kira's SharePoint site:

- Kira's Salesforce Report Viewer
- Kira's Salesforce Foundation Review
- Kira's Salesforce Foundation Experience Proposal/Bio Module
- June Enablement Training - AI.pptx
- Ai Breifing Notes.docx
- Altitude Revenue DD Items.docx
- Foundation GTM.pptx
- Litera Generative AI Updates!
- Kira and Generative AI.docx
- Litera-ChatGPT-BriefDOC.docx
- Kira LLM & GenAI Investments & Zuva.docx
- Deploying AI to Gain a Competitive Advantage OR 3 Ways Law Firms Can Gain a Competitive Advantage When Deploying AI.docx
- Manager_Heatmap (6).xlsx
- CRO 4 box weekly update.pptx
- Foundation Bi-Weekly 4 Box 6.16.23.pptx

Kira will hereinafter refer to the webpages and documents referenced in this Paragraph, collectively with the documents referenced in the immediately preceding Paragraph, as the "SharePoint Documents."

51.    The SharePoint Documents contained Kira's confidential and proprietary information and trade secrets, and the information contained in such documents either

constitute 'Proprietary Information" or "Confidential Information" within the meaning of the Restrictive Covenants Agreement and/or the Kira Agreement.  All of the SharePoint Documents are of the kind a competitor would want to receive or use to better compete against Kira.

52.     Samman accessed several of the SharePoint Documents between 1:58 a.m. (Eastern Time) and 5:20 a.m. (Eastern Time).

53.     Samman had no legitimate reason in connection with his duties for Kira to access the SharePoint Documents on the dates (from May 8, 2023 through June 21, 2023) and times that he accessed them.

54.     The forensic examination revealed that, on June 20, 2023, after accessing several of the SharePoint Documents, Samman visited DeepJudge's website.

55.     The forensic examination revealed that on June 21, 2023, after Samman accessed the SharePoint Documents, he cleared the internet browser history from the Kira Computer.  Upon information and belief, Samman cleared the internet browser history to attempt to avoid Kira's detection of Samman's access of the SharePoint Documents after he returned the Kira Computer to Kira.

56.     Kira and DeepJudge are direct competitors in the business of providing Artificial Intelligence search tools for law firms and corporate legal departments across the world. These search tools provide processing, drafting, reviewing and contract analytics to the exact same market. Both entities provide tools to quickly locate, reuse, and/or adapt templates, clauses, language and arguments to leverage the experience and expertise of a law firm and boost firm productivity.

57.    DeepJudge's CEO, Paulina Grnarova, has claimed that DeepJudge's product is "an AI powered assistant to optimize the workflow of legal professionals…the AI assistant handles manual and repetitive tasks when reading and processing legal documents…highlights the most essential information inside a document collection or surfacing relevant documents and paragraphs." https://www.youtube.com/watch?v=-JcdE_gF_8k (last visited July 11, 2023).

58.    DeepJudge's website currently claims that it is "an AI-powered knowledge search that helps legal professionals swiftly find and leverage insights from large document and knowledge management systems."[1] The website also currently states that "DeepJudge surfaces relevant language from your entire document collection no matter how large." Further, the website also currently states that DeepJudge is used to leverage a law firm's "collective knowledge by searching document and knowledge management systems in natural language. Effortlessly find[ing] **previous documents, clauses and more**." (emphasis added).

59.    After Samman announced his intentions to leave Kira for DeepJudge, DeepJudge engaged in discussions with Kira and its affiliates regarding DeepJudge's products in an attempt to persuade Kira that DeepJudge is not a competitor.  At that time, DeepJudge's webpage explained its product in a manner demonstrating that DeepJudge competes with Kira.  Exhibit D.  Within days of such discussions, DeepJudge made major alterations to its publicly facing website to change the alleged nature and focus of DeepJudge's legal search engine product.

60.    Upon information and belief and based on DeepJudge's demonstrations of its products to Kira, DeepJudge provides Generative AI and machine learning software in

direct competition with Kira to the same universe of law firm and corporate legal department clients across the United States and internationally.

| Functionality | Kira | DeepJudge | Support For Conclusions Beyond Kira's Own Analysis |
|---|---|---|---|
| Use of Artificial Intelligence | Yes | Yes | DeepJudge website (Exhibit E). |
| Identifies Content | Yes | Yes | DeepJudge website (Exhibit E). |
| Analyzes Content | Yes | Yes | DeepJudge website (Exhibit E). |
| Finds clauses and data points from legal documents and clauses | Yes | Yes | DeepJudge website (Exhibit E). |
| Adds metadata and classification to content in documents (e.g. clause types) | Yes | Yes | DeepJudge website (Exhibit E). |
| Designed for primary use within law firms | Yes | Yes | Unlocking Your Firm's Knowledge with Semantic Search \| LinkedIn (Exhibit F)("At DeepJudge we unlock your firm's collective knowledge. We've developed a semantic search engine designed specifically for legal documents. Powered by a proprietary and award-winning #AI that understands the true intent behind your query, our tool enables you to access the expertise and experience of your firm with one simple search.") |
| Contract Analytics: Can query the inclusion of legal terms or issues in large body of documents (eg "are there change of control provisions in this document set" | Yes | Yes | Keyword Search vs Semantic Search: What's the Difference and Why It Matters \| LinkedIn (Exhibit G)("With DeepJudge's Knowledge Search, attorneys can streamline their drafting and reviewing processes across the legal domain and prove relevant competence to potential clients instantly by referencing similar deals"); Unlocking Your Firm's Knowledge with Semantic Search \| LinkedIn (Exhibit F) |
| Cloud application | Yes | Yes | DeepJudge website (Exhibit E). |
| Search and review legal documents by inputting terms in natural language to discover | Yes | Yes | https://www.linkedin.com/posts/steveobenski_hallucinations-auditability-privacy-activity-7069311911737053184-4g_f?utm_source=share&utm_medium=member_desktop (Exhibit H); |

---

[1] The DeepJudge current website is available at https://deepjudge.ai/product.

| | | | documents containing it and relevant variations thereof. | | https://www.linkedin.com/posts/deepjudge_deepjudge-use-cases-activity-7034160638385876993-umoc?utm_source=share&utm_medium=member_desktop (Exhibit I); Exhibit D. |

61.    Upon information and belief and based on DeepJudge's demonstrations of its products to Kira, DeepJudge's capabilities mirror the abilities offered by Kira's integration with Clause Companion.

| Functionality | Kira + Clause Companion | DeepJudge | Support For Conclusions Beyond Kira's Own Analysis |
|---|---|---|---|
| Use of Artificial Intelligence | Yes | Yes | Exhibits C and E. |
| Integrates with iManage/Sharepoint Document Management System | Yes | Yes | Per conversation between Kira representatives and DeepJudge representatives on June 20, 2023; Exhibits C and E. |
| Allows user to search for content stored within the DMS | Yes | Yes | Exhibit C; Keyword Search vs Semantic Search: What's the Difference and Why It Matters \| LinkedIn (Exhibit G)("At DeepJudge, we help #attorneys to find and leverage knowledge hidden in their firm's document database via our Semantic Knowledge Search. This involves easy and intuitive access to previous and precedent contracts, memos, clauses, templates and more, and integrates automatically with the DMS to offer a seamless knowledge retrieval experience."); and Unlocking Your Firm's Knowledge with Semantic Search \| LinkedIn (Exhibit F) ("As AI expert and law professor Daniel Katz summarises in an issue of the Legal IT Insider, Document Management Systems had better come up with a plan - "you're sitting on this huge pile of documents and people would like to be able to organise them and search the documents better and have a tool that allows you to connect the dots." That's where we come in."). |
| Adds metadata and classification to content in documents (eg clause types) | Yes | Yes | DeepJudge website (Exhibit E). |
| Allows user to surface precedent clauses from DMS | Yes | Yes | «Just do it!» - WOMEN IN BUSINESS (Exhibit J) (**"WOMEN IN BUSINESS: What exactly does the start-up DeepJudge offer?**<br>**Paulina Grnarova:** We have developed software that |

| | | | |
|---|---|---|---|
| | | | increases the efficiency of lawyers by automating routine activities. Lawyers have to comb through countless documents for relevant information every day. This activity takes up a lot of time that could be used elsewhere. This is where DeepJudge comes in. The software filters relevant information from documents in no time at all. This takes the legal search process to a new level.") |
| Designed for primary use within law firms | Yes | Yes | Unlocking Your Firm's Knowledge with Semantic Search \| LinkedIn (Exhibit J)("At DeepJudge we unlock your firm's collective knowledge. We've developed a semantic search engine designed specifically for legal documents. Powered by a proprietary and award-winning #AI that understands the true intent behind your query, our tool enables you to access the expertise and experience of your firm with one simple search.") |
| Contract Analytics: Can query the inclusion of legal terms or issues in large body of documents (eg "are there change of control provisions in this document set" | Yes | Yes | Keyword Search vs Semantic Search: What's the Difference and Why It Matters \| LinkedIn (Exhibit G)("With DeepJudge's Knowledge Search, attorneys can streamline their drafting and reviewing processes across the legal domain and prove relevant competence to potential clients instantly by referencing similar deals"); Unlocking Your Firm's Knowledge with Semantic Search \| LinkedIn (Exhibit F) |
| Cloud application | Yes | Yes | Exhibits C and E. |
| Search and review legal documents by inputting terms in natural language to discover documents containing it and relevant variations thereof. | Yes | Yes | Exhibits C, D, H, I. |
| Draft documents by searching database of deals and contracts to reference the preferred legal clause from prior work product. | Yes | Yes | Exhibits C, D, H, I. |

62.    Upon information and belief, and based on DeepJudge's demonstrations of its

products to Kira and its July 13, 2023 Press Release (Exhibit C), DeepJudge's capabilities

mirror the abilities of Kira's GenAI Projects. DeepJudge's application, like Kira's GenAI Projects, is a cloud-based application intended for law firms. Its capabilities include many identical features, such as integration with DMS; query and search tools, including smart semantic searches of DMS; surface precedent clauses from DMS; the addition of metadata and classification to content in documents; contract analytics; use cases; the ability to grab "snippets" of documents; and advanced context-based understanding and processing of legal documents.

63.    Upon information and belief, Samman's new role as DeepJudge's new Chief Revenue Officer and operating from his home in Virginia will be nearly identical to his final role at Kira as Vice President Global Product Sales. He will be responsible for overseeing sales at DeepJudge, developing firmwide sales strategies, managing DeepJudge's sales team, and engaging current and prospective clients. His role will also require him to develop an in-depth knowledge and understanding of DeepJudge's product so that he can better market it.

64.    On June 26, 2023, Kira, through counsel, sent Samman a letter reminding Samman of his post-employment obligations and providing him with a copy of his Noncompete Agreements. (Exhibit K, June 26, 2023, Samman Letter).

65.    Kira, through counsel, also sent DeepJudge a letter on June 26, 2023. (Exhibit L, June 26, 2023, DeepJudge Letter). In that letter, Kira outlined the post-employment obligations contained within Samman's Noncompete Agreements.

66.    On June 30, 2023, DeepJudge and Samman, through counsel, responded to Kira's letters. (Exhibit M, June 30, 2023, Response Letter). The letters declined to honor Samman's Noncompete Agreements and discontinue Samman's employment. Instead,

Samman and DeepJudge sought to differentiate Kira's and DeepJudge's products and markets in an apparent effort to argue that DeepJudge is not a "competitor" of Kira within the meaning the Noncompete Agreements.

67.     On July 7, 2023, counsel for DeepJudge confirmed that DeepJudge intended to move forward with Samman's onboarding process despite DeepJudge's knowledge that doing so would be in breach of Samman's Noncompete Agreements.

68.     Upon information and belief and based on DeepJudge's and Samman's counsel's representations in the July 7, 2023 correspondence and subsequent communications, DeepJudge onboarded Samman on Wednesday, July 12, 2023 as its Chief Revenue Officer, in violation of Samman's Noncompete Agreements.

69.     On July 21, 2023, this Court entered a Temporary Restraining Order (the "TRO") ordering, among other things, that "Samman is enjoined from working for DeepJudge while this Order remains in effect, as outlined in Fed. R. Civ. P. 65(b)(2)."

70.     On August 1, 2023, this Court entered a Preliminary Injunction (the "PI"), ordering, among other things, that "Defendant Samman is enjoined from: (a) working for DeepJudge AG until further order of this Court; and (b) disclosing or using any "Proprietary Information" or "Confidential Information" of Kira in Samman's possession."

71.     As of the date of filing this Amended Complaint, Samman's public profile on LinkedIn states that Samman is DeepJudge's Chief Revenue Officer, in violation of the TRO and the PI (as well as Samman's Noncompete Agreements).

### COUNT I
**(Breach of Contract Against Keenan Samman)**

72.     Kira re-alleges and incorporates the allegations contained in all the foregoing Paragraphs of this Amended Complaint.

73.     Samman is a party to the Noncompete Agreements, attached as Exhibits A and B, which are contracts supported by valid consideration.

74.     Kira is a party or third-party beneficiary with express contractual enforcement rights to the Noncompete Agreements, attached as Exhibits A and B.

75.     Based on the Noncompete Agreements' choice-of-law provisions, this claim is governed by New York and Delaware law, respectively.

76.     All conditions precedent necessary for the enforcement of the Noncompete Agreements have been satisfied.

77.     The Noncompete Agreements are reasonably necessary to protect Kira's legitimate business interests, including Kira's trade secrets, confidential and proprietary information, and its business relationships.

78.     Samman breached the Kira Agreement by: (1) engaging as Chief Revenue Officer in the management of DeepJudge, a business that directly and substantially competes with the specialized products and services of Kira that it markets and sells to law firms and corporate legal departments; (2) transmitting large quantities of Proprietary Information from his Kira email to his personal Gmail account in an apparent attempt to use or disclose Kira's and Proprietary Information for his personal benefit or for the benefit of DeepJudge; and (3) failing to return or destroy all Proprietary Information as expressly required by Section 4(d) of the Kira Agreement.

79.     Samman breached the Restrictive Covenants Agreement by engaging in a "Competitive Activity" (working for DeepJudge as its new Chief Revenue Officer) in the "Restricted Area" (working from his home in Virginia and servicing customers in the United States and around the world as he did with Kira) for a "Competitor" (DeepJudge is a

business that engages in, or is preparing to engage in, "AI-powered knowledge search that helps legal professionals swiftly find and leverage insights from large document and knowledge management systems" in direct competition with Kira and its Generative AI and machine learning search engines).

80.    Samman's own actions forwarding Confidential Information and Proprietary Information to his personal Gmail account further support a breach of his noncompete obligations, as well as constitute a breach of his nondisclosure contractual obligation.  The kind and quality of information Samman forwarded to his personal account in the days prior to his resignation from Kira include lists of Kira customers and associated sales figures and targets.    There is no known legitimate reason for Samman to have forwarded such Confidential Information and Proprietary Information to his personal account in the days and weeks immediately preceding his resignation unless he intended to use such Kira information at DeepJudge to compete against Kira – further demonstrating that DeepJudge is a "Competitor" and that Samman breached his noncompete obligations under the Noncompete Agreements.

81.    Similarly, Samman's unauthorized forwarding of Kira Confidential Information and Proprietary Information to his personal Gmail account constitutes a breach of his nondisclosure obligations under the Noncompete Agreements and presents a clear and present danger that he will disclose or use such Kira Confidential Information and Proprietary Information during his employment with DeepJudge, again in violation of his contractual nondisclosure obligations.

82.    Samman's wrongful actions have proximately damaged Kira's legitimate business interests and goodwill and have denied Kira the benefit of its bargain with respect to these Noncompete Agreements.

83.    As a direct and proximate result of Samman's conduct, Kira has suffered and will continue to suffer, irreparable injury and significant damages in an amount to be proven at trial.

## COUNT II
### (Tortious Interference with a Contract Against DeepJudge AG)

84.    Kira re-alleges and incorporates the allegations contained in all the foregoing Paragraphs of this Amended Complaint.

85.    Kira had a valid and enforceable contractual relationship with Samman under the Noncompete Agreements, which, among other things, were intended to protect Kira's trade secrets, confidential and proprietary information, and its business relationships by restricting Samman's ability to pursue post-employment work with Kira's competitors for reasonable durations of time after his employment with Kira terminated.

86.    To the extent not previously made aware by Samman himself, on June 26, 2023, Kira notified DeepJudge of the existence of the Noncompete Agreements, the intended purpose of the Noncompete Agreements to protect Kira's confidential and proprietary information, and business relationships, and Samman's violation of the Noncompete Agreements by pursuing employment at DeepJudge.

87.    On June 30, 2023, DeepJudge confirmed its knowledge of the existence and terms of the Noncompete Agreements in its response to Kira's counsel.

88.    Despite DeepJudge's knowledge of the existence and terms of the Noncompete Agreements, DeepJudge, by counsel and on July 7, 2023 and subsequent

thereto, indicated its informed decision to onboard Samman and, upon information and belief, onboarded Samman on July 12, 2023, thereby inducing Samman to breach the Noncompete Agreements with Kira.

89.    DeepJudge understood the specific harm Kira would face if Samman was hired, including a breach of Samman's noncompetition restrictions and the disclosure of trade secrets, confidential information, and business relationships.  Nonetheless, DeepJudge continued forward with its onboarding of Samman.  DeepJudge's inducement of Samman to breach the Noncompete Agreements was intentional and unjustified.

90.    Upon information and belief, as of the filing date of this Amended Complaint, Samman is employed with DeepJudge and is currently in breach of his Noncompete Agreements with Kira.

91.    The actions of DeepJudge are far outside the normally accepted practices of the competitive marketplace, and constituted tortious interference with Kira's Employment Contracts.

92.    As a direct and proximate result of DeepJudge's conduct, Kira has suffered and will continue to suffer, irreparable injury and significant damages in an amount to be proven at trial.

## COUNT THREE
### (Violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.*, Against Samman)

93.    Kira re-alleges and incorporates the allegations contained in all the foregoing Paragraphs of this Amended Complaint.

94.    By virtue of his contractual relationship with Kira (including but not limited to his obligations not to use or disclose Kira's confidential and proprietary information), Kira gave the Defendant access to Kira's trade secrets and confidential and proprietary

information—information that is valuable to Kira's business and gives Kira an advantage over competitors.

95.    Samman acquired Kira's trade secrets (including but not limited to the confidential and proprietary information contained in the emails and their attachments referenced in Paragraph 45 and the SharePoint Documents) with knowledge or reason to know that he did so by improper means.  Samman therefore misappropriated Kira's trade secrets.

96.    The trade secrets of Kira obtained by Samman relate to Kira's business and services that are maintained and provided in interstate commerce.

97.    The trade secrets and confidential and proprietary information of Kira acquired by Samman each constitute a "trade secret" within the meaning of 18 U.S.C. § 1839(3) because, *inter alia*, it is secret and of value as a result of not being generally known as set forth above, and Kira takes and has taken measures to prevent the secrets from becoming available to persons other than those selected by Kira to have access thereto.

98.    By virtue of his contractual obligations and confidential relationship with Kira, Samman had and has a duty to maintain the confidentiality of Kira's trade secrets and confidential and proprietary information, as well as a continuing duty not to use, exploit, or divulge such information other than in connection with the performance of his duties for Kira, for the benefit of Kira, and pursuant to authorization from Kira.

99.    Samman has maliciously and willfully misappropriated Kira's trade secrets and confidential and proprietary information by acquiring and retaining such trade secrets and confidential and proprietary information after he already submitted his resignation to Kira and accepted a position with a direct competitor, DeepJudge. Samman deliberately

elected and maintained a course of conduct designed to acquire Kira's trade secrets in an effort to unfairly compete with Kira, divert business opportunities to DeepJudge, and deprive Kira of past and future profits.

100.    Upon information and belief, Samman has maliciously and willfully misappropriated Kira's trade secrets and confidential and proprietary information by disclosure of the same for the benefit of a direct competitor of Kira.  Upon information and belief, Samman deliberately elected and maintained a course of conduct designed to disclose Kira's trade secrets to others (including DeepJudge) in an effort to unfairly compete with Kira, divert business opportunities to DeepJudge, and deprive Kira of past and future profits.

101.    As a result of the Samman's misappropriation of Kira's trade secrets, Samman has and continues to violate the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1).

102.    Pursuant to Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(3)(A), Kira is entitled to injunctive relief.

103.    Unless injunctive relief is granted, Samman will continue to misappropriate and benefit from misappropriation of Kira's trade secrets and will continue to cause further irreparable injury to Kira.

104.    By virtue of the Samman's bad faith and willful and malicious misappropriation of Kira's trade secrets, Kira is entitled to reasonable attorney's fees, as provided for by the Defend Trade Secrets Act, 18 U.S.C. §§ 1836(b)(3)(B)-(D).

## COUNT FOUR
### (Breach of Fiduciary Duty Against Samman)

105.    Kira re-alleges and incorporates the allegations contained in all the foregoing Paragraphs of this Amended Complaint.

106.    By virtue of his position with Kira, and the fact that he was entrusted with the confidential information of Kira, Samman had a fiduciary duty to act in good faith in any matter relating to Kira and not to engage in conduct that was disloyal to Kira.

107.    Samman breached his fiduciary duty to Kira by engaging in the conduct alleged above, including sending emails to his personal email address containing Kira's confidential and proprietary information and misappropriating the SharePoint Documents, during his employment with Kira and thereafter.

108.    It is a breach of Samman's continuing fiduciary duty to Kira to capitalize on his wrongful conduct during his employment by Kira and thereafter.

109.    Kira has suffered, and will continue to suffer, irreparable harm as a result of Samman's wrongful conduct, for which Kira does not have an adequate remedy at law.

110.    In addition to injunctive relief, Samman's wrongful conduct has caused Kira to suffer damages in an amount to be established at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Kira (US) Inc. prays that the Court:

1.    Enter judgment that Samman breached his contractual obligations to Kira;

2.    Enter judgment that DeepJudge tortiously interfered with Kira's Noncompete Agreements with Samman;

3.    Preliminarily and permanently enjoin Samman from breaching his noncompetition contractual obligations to Kira;

4.    Preliminarily and permanently enjoin Samman from breaching his nondisclosure contractual obligations to Kira;

5.      Order Samman and DeepJudge to: (i) preserve any and all documents in his/its possession, custody, or control containing, relating to, or embodying Kira Proprietary Information and Confidential Information until final resolution of the above-captioned matter; and (ii) at the conclusion of the above-captioned matter, return and/or destroy all Kira Proprietary Information and Confidential Information in his possession, custody or control;

6.      Award Kira compensatory damages for all damages sustained as a result of Samman's and/or DeepJudge's wrongdoing, in an amount to be proven at trial;

7.      Award Kira exemplary and/or punitive damages to the fullest extent permitted by common law claims;

8.      Award Kira damages in the amount Samman and DeepJudge were unjustly enriched by disgorging Samman and DeepJudge of all profits and compensation earned from their improper conduct and awarding Kira all such profits and compensation;

9.      Award Kira exemplary damages and attorneys' fees as provided for in 18 U.S.C. §§ 1836(b)(3)(B)-(D);

10.     Award Kira pre-judgment and post-judgment interest at the maximum rate allowed by law; and

11.     Award Kira such other legal or equitable relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Kira (US) Inc. hereby demands a jury trial on all issues of fact so triable.

Respectfully submitted,

_s/Scott M Dinner_
Scott M. Dinner, VSB No. 85577
NIXON PEABODY LLP
799 9th Street, NW, Suite 500
Washington, DC 20001
(202) 585-8505 (telephone)
(844) 996-1233 (facsimile)
sdinner@nixonpeabody.com

Matthew McLaughlin (*pro hac vice*)
NIXON PEABODY LLP
Exchange Place, 53 State Street
Boston, MA 02109
(617) 345-1000 (telephone)
(866) 440-6480 (facsimile)
mmclaughlin@nixonpeabody.com

Aaron F. Nadich (*pro hac vice*)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
401-454-1000 (telephone)
844-885-9995 (facsimile)
anadich@nixonpeabody.com

***Attorneys for Kira (US) Inc.***

## **VERIFICATION**

I, Michelle Meurer, state that I am the Chief People Officer of Kira (US) Inc. in the case captioned *Kira (US) Inc. v. Keenan Samman and DeepJudge AG*, and have authorized the filing of this Verified Amended Complaint. I have reviewed the allegations made in the Verified Amended Complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on business records maintained in their regular course of business, and I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 16, 2023